IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ROBERT L. MASTIN,
et al.,

    Plaintiffs,

v.                                    Civil Action No. 3:17cv368

DITECH FINANCIAL, LLC,
et al.,

    Defendants.

### MEMORANDUM OPINION

This matter is before the Court on DEFENDANT'S DITECH
FINANCIAL LLC AND BANK OF NEW YORK MELLON CORPORATION'S MOTION
TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (ECF No. 21). For the
reasons set forth below, DEFENDANT'S DITECH FINANCIAL LLC AND
BANK OF NEW YORK MELLON CORPORATION'S MOTION TO DISMISS
PLAINTIFFS' AMENDED COMPLAINT (ECF No. 21) will be granted in
part and denied in part.

### BACKGROUND

## I. Factual Background

The facts are set out as alleged in the Amended Complaint.
And, they must be taken as true for purposes of assessing
whether the Amended Complaint satisfies Fed. R. Civ. P.
12(b)(6).

On November 2, 2005, Robert L. Mastin and Jodi A. Mastin (collectively "Plaintiffs") executed a promissory note (the "Note"), in which they were borrowers, and a deed of trust ("Deed of Trust") (collectively the "Loan") in order to finance their purchase of real property located at 7207 Towles Mill Road, Spotsylvania, Virginia 22553 (the "Property"). (ECF No. 18, Amend. Compl. ¶¶ 5-6 ("Amend. Compl.")); (ECF No. 8, Defendant's Reply in Support of Their Motion to Dismiss Plaintiffs' Complaint, Ex. A ("Def. First Reply")).[1] Plaintiffs first "fell behind" on their loan payments in 2009. (Amend. Compl. ¶ 7). The term "fell behind," as used in the Amended Complaint, is taken to mean that the Mastins were then in default.

In November 2013, the Loan was transferred and Ditech and Greentree Servicing, LLC ("Ditech"), assumed servicing of the Loan. "Shortly after" the Loan was transferred, Plaintiffs began submitting paperwork to Ditech for a loan modification, in

---

[1] In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts may consider documents to which reference is made in the complaint. Am. Chiropractic Ass'n v. Trigon Healthcare, Inc., 367 F.3d 212, 234 (4th Cir. 2004). When a plaintiff refers to, but fails to include, a pertinent document in his complaint, a defendant may attach the document to a motion to dismiss without converting the motion to one for summary judgment. Gasner v. Cty. of Dinwiddie, 162 F.R.D. 280, 282 (E.D. Va. 1995). Here, Plaintiffs refer to the Deed of Trust in their Amended Complaint; this document is central to Plaintiffs' claim and may therefore be considered by the Court. (Amend. Compl. ¶ 6).

response to which Ditech appointed several points of contact to Plaintiffs' file. (Amend. Compl. ¶¶ 9-10). When Plaintiffs called Ditech, Plaintiffs were not able to speak with the same point of contact more than once. (Amend. Compl. ¶ 11). In 2014, the Property was destroyed in a house fire, prompting Ditech to deny Plaintiffs' loan modification review due to lack of occupancy. (Amend. Compl. ¶¶ 12-13).

Sometime after the denial, Plaintiffs hired MVP Home Solutions, LLC ("MVP"), to assist them in their loan modification review. (Amend. Compl. ¶ 14). MVP ceased working for Plaintiffs after two years, at which time Plaintiffs began consulting directly with Ditech to work towards a loan modification. (Amend. Compl. ¶¶ 15-19). On August 22, 2016, Plaintiffs submitted a loan modification application to Ditech. (Amend. Compl. ¶ 20). Following this submission, Plaintiffs contacted Ditech "daily regarding their application," had trouble reaching Ditech, and were asked for "duplicative information" when they did reach Ditech. (Amend. Compl. ¶ 21). Ditech also requested a profit and loss statement from Plaintiffs, which Plaintiffs submitted on August 30, 2016. (Amend. Compl. ¶ 22).

In the "days leading to the foreclosure sale," Ditech informed Plaintiffs of a "math error" on their profit and loss statement and that if they submitted a revised copy the planned

foreclosure sale would be cancelled; Plaintiffs resubmitted this document to Ditech "that same day." (Amend. Compl. ¶¶ 23-25). The foreclosure auction, however, was not postponed and Commonwealth Trustees, LLC ("Substitute Trustee"), as substitute trustee, foreclosed on the Property on November 9, 2016, at which time the Property was sold to Bank of New York Mellon Corporation ("BONY"). (Amend. Compl. ¶¶ 26-28).

Over the course of the next two months, Plaintiffs and Ditech had correspondence regarding the Loan, in which Plaintiffs were given conflicting information regarding the possibility of "workout options" and the cancellation of the foreclosure sale; in one of these correspondence, Plaintiffs sent Ditech a "Notice of Error," to which Ditech's response omitted any mention of cancelling the foreclosure sale. (Amend. Compl. ¶¶ 29-33). Since 2013, Plaintiffs have on multiple occasions attempted to make payments to Ditech on the Loan, Ditech, however, has refused to accept any such payments; as a result, BONY is seeking possession of the Property in the General District Court for the County of Spotsylvania. (Amend. Compl. ¶¶ 34-35).

## II. Procedural Background

On April 17, 2017, Plaintiffs commenced this action against Ditech, BONY, and Substitute Trustee (collectively "Defendants"), in the Circuit Court for the County of

Spotsylvania, Case No. CL17-395. (ECF No. 1, Defendant's Notice of Removal, Ex. A ("Def. Not. of Remove.")). Plaintiffs alleged claims of breach of contract, violation of the Virginia Consumer Protection Act, and violation of the Consumer Financial Protection Bureau's Regulation X. As a remedy, Plaintiffs requested rescission of the foreclosure sale. (Def. Not. of Remove., Ex. A ¶¶ 36-68). On May 11, 2017, Ditech and BONY filed a Notice of Removal in this Court (to which Substitute Trustee consented) alleging jurisdiction to be proper under 28 U.S.C. §§ 1331, 1332, and 1367. (Def. Not. of Remove. ¶¶ 9-12). Although Plaintiffs filed a motion to remand the matter to state court, the Court found jurisdiction to be proper under 28 U.S.C. § 1331 and 28 U.S.C. § 1367. (ECF No. 11, Plaintiffs' Motion to Remand; ECF No. 16, Order Denying Plaintiffs' Motion to Remand).

On May 18, 2017, Ditech and BONY filed a motion to dismiss Plaintiffs' complaint for failure to state a claim upon which relief could be granted, and, on July 28, 2017, the Court found "that...the...[c]omplaint fail[ed] to plead sufficient factual allegations to support any claim upon which relief [could] be granted," ordered the complaint dismissed without prejudice, and granted Plaintiffs leave of court to file an amended complaint within 21 days. (ECF No. 17). The Plaintiffs were admonished that the Court had "serious doubts as to the viability of the claims...pled and the relief requested." Id.

Plaintiffs filed an Amended Complaint against the Defendants on August 18, 2017. (Amend. Compl.). In their Amended Complaint, Plaintiffs alleged violations of Regulation X, 12 C.F.R. § 1024.1 et seq., which implements provisions of the Real Estate Settlement Procedures Act ("RESPA"), and Regulation Z, which implements the Truth in Lending Act ("TILA"), 12 C.F.R. § 1026.1 et seq. Although Plaintiffs no longer sought relief under state law, (See Amend. Compl. ¶¶ 36-46),[2] they once again sought rescission of the foreclosure sale as a remedy. (Amend. Compl. ¶¶ 47-52).

On August 31, 2017, the Substitute Trustee filed a motion to dismiss the Amended Complaint. (ECF Nos. 19, 20). Following suit, Ditech and BONY filed this motion to dismiss the Amended Complaint. Plaintiffs filed a response in opposition to the motion to dismiss filed by Ditech and BONY who then filed a reply. However, because Plaintiffs did not file a response to the Substitute Trustee's motion to dismiss the Amended Complaint, the Court granted the Substitute Trustee's motion and dismissed the Amended Complaint with prejudice as to the

---

[2] Plaintiffs seemingly characterize their allegations under a TILA regulation, 12 C.F.R. § 1026.36(c)(1)(ii), as one contained in RESPA's implementing regulation, known as "Regulation X." 12 C.F.R. § 1024.1 et seq. This part of the Code of Federal Regulations, however, known as "Regulation Z," was promulgated under the authority of, and with the intention of implementing, TILA. 12 C.F.R. § 1026.1(a).

Substitute Trustee. (ECF No. 26). Thus, Plaintiffs, Ditech and BONY are the only remaining parties before this Court.

## STANDARD OF REVIEW

Fed. R. Civ. P. 12(b)(6) permits the dismissal of a plaintiff's claim when a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. Pro. 12(b)(6). A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of a complaint. Schatz v. Rosenberg, 943 F.2d 485, 489 (4th Cir. 1991). In testing the legal sufficiency of a complaint, a court must "assume the truth of all facts alleged in the complaint" and "must take the facts in the light most favorable to the plaintiff." Eastern Shores Mkts., Inc. v. J.D. Assoc. Ltd. P'ship, 213 F.3d 175, 180 (4th Cir. 2000). A court need not, however, "accept the legal conclusions drawn from the facts" or accept as true any inferences, conclusions or arguments. Id.

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A claim is considered "plausible" if a plaintiff pleads sufficient facts to allow a court to go beyond mere speculation and draw a reasonable inference that the defendant is liable for the alleged

misconduct. <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009); <u>see</u> <u>Twombly</u>, 550 U.S. at 555. A motion to dismiss should be granted, however, if a plaintiff's complaint does no more than set forth a recitation of the elements of a claim, supported by mere legal conclusions. <u>Iqbal</u>, 556 U.S. at 678; <u>see</u> <u>Walters v. McMahen</u>, 684 F.3d 435, 439 (4th Cir. 2012) (reiterating that mere legal conclusions are entitled to no deference and are not sufficient to survive a motion to dismiss under Rule 12(b)(6)); <u>Hooker v. Disbrow</u>, No. 1:16-cv-1588-GBL-JFA, 2017 U.S. Dist. LEXIS 57403, at *5-6 (E.D. Va. April 13, 2017).

If the Court dismisses Plaintiffs' claims, it must decide whether to give Plaintiffs leave to amend their complaint. Because Plaintiffs may no longer amend their complaint as a matter of course, either the opposing party's consent or leave of court is required. Fed. R. Civ. Pro. 15(a). Leave of court to amend a complaint is governed by Rule 15(a)(2) of the Federal Rules of Civil Procedure, which states that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. Pro. 15(a)(2). The rule has been interpreted "to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would . . . be[] futile.'" <u>Labor v. Harvey</u>, 438 F.3d 404, 426 (4th Cir.

2006) (quoting <u>Johnson v. Oroweat Foods Co.</u>, 785 F.2d 503, 509 (4th Cir. 1986)).

**DISCUSSION**

**I.  Alleged  Violation  of  Regulation  Z.  12  C.F.R.  §  1026.36(c)(1)(ii)[3]**

Plaintiffs allege that, since "early 2013" they have attempted to make payments on the Loan and that Ditech "continuously refused to accept payment on the note." (Amend. Compl. ¶ 34). Plaintiffs allege that Ditech violated Regulation Z, 12 C.F.R. § 1026.36(c)(1)(ii) because Ditech "could have accepted partial payments [on the Loan] [under 12 C.F.R. § 1026.36(c)(1)(ii)] and held them in a suspense account for application to the [L]oan when the account came to full payment." (Amend. Compl. ¶ 37). Plaintiffs claim that Ditech's "blatant refusal to exercise this option...caused the Plaintiff's [sic] to suffer harm." <u>Id.</u>

This claim, however, is based on a misapprehension of the regulation in question. It also runs afoul of the provisions of the Deed of Trust, which specifically allows for Ditech's refusal of partial payments.

The claims fails in the first instance because the regulation on which it is based is not mandatory. 12 C.F.R. § 1026.36(c)(1)(ii) states that:

---

[3] <u>See</u> <u>supra</u> note 2.

> Any servicer that retains a partial payment,
> meaning any payment less than a periodic
> payment, in a suspense or unapplied funds
> account shall:(A) Disclose to the consumer
> the total amount of funds held in such
> suspense or unapplied funds account on the
> periodic statement as required by § 
> 1026.41(d)(3), if a periodic statement is
> required; and (B) On accumulation of
> sufficient funds to cover a periodic payment
> in any suspense or unapplied funds account,
> treat such funds as a periodic payment
> received in accordance with paragraph
> (c)(1)(i) of this section.

Under 12 C.F.R. § 1026.36, a periodic payment is defined as "an amount sufficient to cover principal, interest, and escrow (if applicable) for a given billing cycle." 12 C.F.R. § 1026.36(c)(1)(i). A partial payment is defined as "any payment less than a perioic payment." 12 C.F.R. § 1026.36(c)(1)(ii). Plaintiffs have admitted in their Amended Complaint that any payments they made are less than the amount necessary to qualify as periodic payments and are therefore governed by 12 C.F.R. § 1026.36(c)(1)(i). (Amend Compl. ¶¶ 34, 37).

The regulator's interpretation of this provision provide that a loan servicer who "receives a partial payment from a consumer, to the extent not prohibited by applicable law or the legal obligation between the parties,...may take any of the following actions: (i) Credit the partial payment upon receipt. (ii) Return the partial payment to the consumer. (iii) Hold the payment in a suspense or unapplied funds account." CONSUMER

FINANCIAL PROTECTION BUREAU, OFFICIAL INTERPRETATION TO 36(c)(1)(ii), https://www.consumerfinance.gov/eregulations/1026-36/2013-30108_20140118#1026-36-c-1-iii (emphasis added); see 10 KENNETH M. LAPINE ET AL., BANKING LAW § 175.04 (2017) (approving of the Consumer Financial Protection Bureau's official interpretation of 12 C.F.R. § 1026.36(c)(1)(ii)); accord MITCHEL H. KIDER ET AL., REAL ESTATE AND MORTGAGE BANKING SCOPE INFORMATION § 7:46 (2015). Neither party has cited any decisional law addressing this issue. The Court has located none. However, the interpretation of the Consumer Financial Protection Bureau ("CFPB") makes sense as a matter of statutory interpretation.

It has long been held that "the plain, obvious, and rational meaning of a statute is always to be preferred to any curious, narrow, hidden sense that nothing but the exigency of a hard case and the ingenuity and study of an acute and powerful intellect would discover." Lynch v. Alworth-Stephens Co., 267 U.S. 364, 370 (1925) (internal quotation marks omitted). The regulation at issue begins by saying, "[a]ny servicer that retains a partial payment..." and continues on to impose restrictions on such servicers. 12 C.F.R. § 1026.36(c)(1)(ii). The mere fact of stating "any servicer who retains a partial payment" naturally suggests that there are servicers who do not retain such payments. Id. If all servicers were required to retain partial payments, one might expect the regulation to

begin by stating that "a servicer shall retain partial payments in a suspense or unapplied funds account." Moreover, the regulation, by its explicit terms, is permissive.

Furthermore, Plaintiffs cannot rely on Ditech's obligations under the Deed of Trust because the Deed of Trust explicitly provides that Ditech need not accept Plaintiffs' partial payments.[4] The Deed of Trust states in pertinent part: "[Ditech] may return any payment or partial payment if the payment is insufficient to bring the Loan current." (Def. First Reply, Ex. B). Plaintiffs do not allege anywhere in their amended complaint that their attempted payments would bring the Loan current. (Amend. Compl. ¶¶ 34, 37).

Plaintiffs' claim under the regulation rises and falls on the notion that Ditech is obligated to accept Plaintiffs' partial payments and hold the payments in a suspense account until Plaintiffs are able to eliminate any arrearage. Id. As explained above, however, 12 C.F.R. § 1026.36(c)(1)(ii) does not require a loan servicer such as Ditech to accept partial payments at all, and the Deed of Trust specifically provides that Ditech may reject payments that are "insufficient to bring the Loan current." (Def. First Reply, Ex. B). Therefore, this claim fails as a matter of law. Moreover, the legal

---

[4] To be perfectly clear, Plaintiffs do not rely on the language contained in the Deed of Trust. See (Amend. Compl.). But, if they could, further amendment might be appropriate.

12

insufficiency of the claim could not be remedied by giving Plaintiffs another opportunity to amend because amendment would be futile for the reason that the theory is not viable as a matter of law. Labor, 438 F.3d at 426 (quoting Johnson, 785 F.2d at 509).

## II. Violation of Regulation X

Plaintiffs next allege that "Ditech has violated...[RESPA] Regulation X also known as 12 CFR 1024 [sic]." (Amend. Compl. ¶ 36). For the following reasons, however, the Amended Complaint fails to state a claim under Regulation X upon which relief can be granted.

To the extent that Plaintiffs' claim relies on 12 C.F.R. § 1024.38(a), their Amended Complaint fails because, as explained below, 12 C.F.R. § 1024.38(a) does not create a private right of action. Insofar as the Amended Complaint relies upon Ditech's alleged violation of 12 C.F.R. § 1024.41(c)(2)(ii), it should likewise be dismissed with prejudice because Ditech was under no obligation to evaluate an incomplete loss mitigation application. To the extent that the Amended Complaint alleges violations of 12 C.F.R. § 1024.41(g), it is legally insufficient as well.

### A. 12 C.F.R. § 1024.38(a)

Plaintiffs confusingly allege that "[c]ounter to Defendant's [sic] assertion, 12 C.F.R. 1024.38(a) [sic] states

that a lender 'shall maintain policies and procedures' necessary to comply with the recommendations in the rest of the section." (Amend. Compl. ¶ 38) (emphasis in original). Plaintiffs further allege that, under 12 C.F.R. § 1024.41(a), "a borrower 'may enforce' provisions of Regulation X under 12 U.S.C. 2605(f) [sic]." (Amend. Compl. ¶ 39). For the following reasons, Plaintiffs allegations as they rely on 12 C.F.R. § 1025.38(a) have failed to state a claim upon which relief can be granted.

As an initial matter, the part of the Amended Complaint purporting to charge a violation of 12 C.F.R. § 1024.38(a) seems to be relying on allegations set forth in their original complaint in an attempt to state a claim under 12 C.F.R. § 1024.38(a). (Amend. Compl. ¶¶ 38-39); (Def. Not. of Remove, Ex. A, ¶¶ 52-57). By doing so, Plaintiffs apparently seek to remedy deficiencies contained in their original complaint that were pointed out in the briefing of Defendants' original motion to dismiss. That effort must be ignored.

Under the Federal Rules of Civil Procedure, "[a] pleading that has been amended...supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified." VIKRAM D. AMAR ET AL., FEDERAL PRACTICE AND PROCEDURE, WRIGHT & MILLER § 1476 (2017). Furthermore, "the original pleading, once superseded, cannot be utilized to cure defects in the amended pleading, unless the relevant portion is specifically

incorporated in the new pleading." Id. Here, Plaintiffs have failed specifically to incorporate these claims into their Amended Complaint. (Amend. Compl. ¶ 38). Indeed, such allegations are entirely absent from the Amended Complaint. Compare (Amend. Compl. ¶¶ 38-39) with (Def. Not. of Remove, Ex. A, ¶¶ 52-57). Because of this omission, and the rules governing the amendment of pleadings, the Amended Complaint must be considered without reference to any allegation contained in the original complaint.

In any event, the Amended Complaint wholly fails to state a claim upon which relief can be granted under 12 C.F.R. § 1024.38(a). That section mandates that a "servicer shall maintain policies and procedures that are reasonably designed to achieve the objectives set forth in paragraph (b)."[5] Thus, 12 C.F.R. § 1024.38(a) requires "only that a lender enact policies" that effectuate the goals outlined in that section. Sabatino v. Pill, No. 1:17CV72, 2017 U.S. Dist. LEXIS 148804, at *9 (W.D. Va. 2017). Plaintiffs', however, allege only facts that might support isolated instances where Ditech's procedures may have been deficient. The Amended Complaint does not allege that Ditech failed to "maintain policies and procedures that are

---

[5] A number of objectives are set forth in 12 C.F.R. § 1024.38(b), including, but not limited to, accessing and providing timely and accurate information, properly evaluating loss mitigation applications, facilitating oversight of, and compliance by, service providers. See 12 C.F.R. § 1024.38(b).

reasonably designed to achieve" any of the goals listed in 12 C.F.R. § 1024.38(b). See (Amend. Compl. ¶¶ 20-27, 36-45). Under that circumstance, the Amended Complaint does not allege sufficient facts to allow the court to go beyond mere speculation and certainly does not permit a reasonable inference that Defendants are liable for the alleged misconduct. The motion to dismiss should be granted for that reason alone. Iqbal, 556 U.S. 662, 678 (2009); see Twombly, 550 U.S. at 555.

Even if Plaintiffs had pled enough facts in their Amended Complaint to support a plausible allegation that Ditech had not "maintain[ed] policies and procedures that [were] reasonably designed to achieve the objectives set forth in paragraph (b)" of 12 C.F.R. § 1024.38, the Amended Complaint would still fail to state a claim upon which relief could be granted because 12 C.F.R. § 1024.38 does not create a private right of action.

The Supreme Court of the United States has said that administrative "[a]gencies may play the sorcerer's apprentice but not the sorcerer himself." Alexander v. Sandoval, 532 U.S. 275, 291 (2001). Put less colorfully, an administrative agency may by regulation "invoke a private right of action that Congress through statutory text created, but it may not create a right that Congress has not." Id. (citing Touche Ross & Co. v. Redington, 442 U.S. 560, 577 n. 18 (1979)). A valid and reasonable regulation that authoritatively construes a statute

that creates a private right of action does, however, contain a private right of action. Sandoval, 532 U.S. at 284. This follows because "[a] Congress that intends [a] statute to be enforced through a private cause of action intends the authoritative interpretation of the statute to be so enforced as well." Id. To determine whether a private right of action is created under 12 C.F.R. § 1024.38, the authority under which it was promulgated must be identified.

CFPB is authorized under multiple sections of RESPA to promulgate regulations implementing RESPA's objectives. See, e.g., 12 U.S.C. § 2617(a). Not all of those enabling provisions, however, grant CFPB the authority to promulgate regulations that create private rights of action. Compare 12 U.S.C. § 2605(j)(3) with 12 U.S.C. § 2617(a). Recognizing the possibility of confusion, CFPB took pains during the rulemaking process to identify the precise authority under which each regulation was enacted.

Here, CFPB made clear that 12 C.F.R. § 1024.38 was enacted under the authority of 12 U.S.C. § 2617, which does not create a private right of action (as opposed, for example, to 12 U.S.C. § 2605, which does).[6] 78 Fed. Reg. 10696, 10777-79 (Feb. 14, 2013).

---

[6] Section 19 of RESPA was codified at 12 U.S.C. § 2617, while Section 6 of RESPA was codified at 12 U.S.C. § 2605. It is appropriate to make note of this information here because subsequent quotations from the Federal Register contained in

In no uncertain terms, CFPB announced that it "adopt[ed] § 1024.38 pursuant to its authority under [12 U.S.C. § 2617(a)]." 78 Fed. Reg. at 10779. This was a conscious decision by CFPB after the notice and comment period revealed that "allowing a private right of action for the provisions that set forth general servicing policies, procedures, and requirements would create significant litigation risk." Id. As a result, CFPB carefully crafted a rule that requires "supervision and enforcement by the Bureau and other Federal regulators for compliance with and violations of § 1024.38," but rejects "private liability for violations of § 1024.38." Id.

Considering the explicit interpretation given to 12 C.F.R. § 1024.38 by CFPB, there is a predictable absence of case law from within this district construing its requirements. Other districts that have squarely confronted the issue, however, have uniformly confirmed CFPB's interpretation. See Austerberry v. Wells Fargo Home Mortg., No. 15cv13297, 2015 U.S. Dist. LEXIS 163454, at *12-14 (E.D. Mich. Dec. 7, 2015) (holding that 12 C.F.R. § 1024.38 does not create a private right of action); Smith v. Nationstar Mortg., No. 15-13019, 2015 U.S. Dist. LEXIS 154344, at *9-11 (E.D. Mich. Nov. 16, 2015) (affirming CFPB's interpretation of the regulation). For example, in an action

---

this memorandum replace RESPA's original section designations with the designations now contained in the United States Code.

eerily similar to Plaintiffs', a United States District Court granted a defendant's motion to dismiss in response to a plaintiffs claim under 12 C.F.R. § 1024.38; the court did so because it found 12 C.F.R. § 1024.38 did not create a private right of action under which the plaintiff could state a claim. Joussett v. Bank of America, N.A., No. 15-6318, 2016 U.S. Dist. LEXIS 138912, at *14-16 (E.D. Pa. Oct. 6, 2016).

Therefore, insofar as the Amended Complaint relies on any alleged violation of 12 C.F.R. § 1024.38, it is fatally defective because there is no right privately to enforce those provisions of the regulation. And, no amendment could cure that defect, making any amendment a futility. That aspect of the Amended Complaint will be dismissed with prejudice. Labor, 438 F.3d at 426 (quoting Johnson, 785 F.2d at 509).

**B.    12 C.F.R. § 1024.41**

The Amended Complaint also fails to state a claim upon which relief can be granted to the extent its relies on 12 C.F.R. § 1024.41(g)[7] because the Amended Complaint does not

---

[7] To be explicit, contrary to their assertions concerning 12 C.F.R. § 1024.38, Plaintiffs are in fact correct when they state that 12 C.F.R. § 1024.41 creates a private right of action. 12 C.F.R. § 1024.41 ("A borrower may enforce the provisions of this section pursuant to [12 U.S.C. 2605(f)]; (Amend. Compl. ¶ 39). 12 C.F.R. § 1024.41 was promulgated pursuant to 12 U.S.C. § 2605 and is therefore an authoritative interpretation of a statute for which Congress has already granted a private right of action, making such an interpretation permissible. Sandoval, 532 U.S. at 284; 78 Fed. Reg. at 10822-23 (recognizing that CFPB

allege that Plaintiffs submitted to Ditech a complete loss mitigation application more than thirty-seven days before the foreclosure sale.

On August 22, 2016, Plaintiffs submitted a loan modification application to Ditech. (Amend. Compl. ¶ 20). After Ditech informed Plaintiffs of the need to complete a profit and loss statement, Plaintiffs "submitted a complete loan modification[8] [to Ditech] on August 30, 2016." (Amend. Compl. ¶ 41). In response, Ditech scheduled a foreclosure sale of the Property for November 2016, while at the same time assuring Plaintiffs that the foreclosure sale would be cancelled due to

---

enacted this regulation under 12 U.S.C. § 2605 and that it creates "a private right of action pursuant to [12 U.S.C. 2605(f)]"); see Eslick v. Cenlar, No. 2:17cv381, 2017 U.S. Dist. LEXIS 177957, at *6 (E.D. Va. Oct. 3, 2017) (noting that a borrower "may enforce that section's provisions against lenders by a private right of action."); see also Combs v. United States Bank Nat'l Ass'n, No. 1:17cv545, 2017 U.S. Dist. LEXIS 100542, at *2 (E.D. Va. June 28, 2017).

[8] Plaintiffs allege in their memorandum in opposition of Defendants' motion to dismiss the Amended Complaint that they had submitted a "facially complete application," and that under 12 C.F.R. § 1024.41(c)(2)(iv) Ditech was required to treat it as a complete loan modification application from the date of its original submission; here, August 30, 2016. (Resp. in Opp.). This allegation, however, should be disregarded in assessing legal sufficiency because it was not raised in the Amended Complaint. See (Amend. Compl.). Under the Federal Rules of Civil Procedure, it is "axiomatic that a complaint may not be amended by the briefs in opposition to a motion to dismiss." Katz v. Odin, Feldman & Pittleman, P.C., 332 F.Supp.2d 909, 917 n. 9 (E.D. Va. 2004) (internal quotations omitted); see Davis v. Cole, 999 F.Supp. 809, 813 (E.D. Va. 1998) (refusing to consider additional allegations offered in response to motion to dismiss).

their "full and complete application." (Amend. Compl. ¶¶ 42-43). Following this, Plaintifs were informed that there was a "math error" in the profit and loss statement that needed to be corrected; Plaintiffs did so that same day on Ditech's assurance that if they did so the foreclosure sale would be cancelled. (Amend. Compl. ¶¶ 23-25). Ditech, however, foreclosed on the Property on November 9, 2016. (Amend. Compl. ¶ 45).

The Amended Complaint asserts that such conduct was "in express violation of [12 C.F.R. § 1024.41]." Id. In the alternative, Plaintiffs allege that, even if their loan modification application was incomplete, Ditech still "may evaluate a loss mitigation package" under 12 C.F.R. § 1024(c)(2)(ii) and that Plaintiffs' position "would almost require" Ditech to do so. (Amend. Compl. ¶ 46). In both instances, Plaintiffs claim that Ditech's course of conduct resulted in Plaintiffs being "divested of their family home." (Amend. Compl. ¶ 45).

Under 12 C.F.R. § 1024.41(g), a loan servicer who has received a complete loss mitigation application "more than 37 days before a foreclosure sale...shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale."[9] "Complete Loss Mitigation Application" is defined by the

---

[9] Although there are a number of exceptions to this rule, none of them are implicated by the facts as alleged in Plaintiffs' amended complaint. See 12 C.F.R. § 1024.41(g)(1)-(3).

regulation to mean "an application in connection with which a servicer has received all the information that the servicer requires from a borrower in evaluating applications for the loss mitigation options available to the borrower." 12 C.F.R. § 1024.41(b)(1). CFPB has further explained that a servicer "has flexibility to establish its own application requirements and to decide the type and amount of information it will require from borrowers applying for loss mitigation options." CONSUMER FINANCIAL PROTECTION BUREAU, OFFICIAL INTERPRETATION TO 36(c)(1)(ii), https://www.consumerfinance.gov/eregulations/1024-41/2015-18239#1024-41-b-2. According to the text of the regulation itself and CFPB's official interpretation, then, a servicer has the discretion to decide what applications it considers to be "complete."[10] A servicer that violates this provision is liable to a plaintiff for (1) any actual damages caused by the violation as well as (2) an amount not to exceed $2,000 for each violation in the case of a pattern or practice of noncompliance with the requirements of that section. 12 C.F.R. § 1024.41(a). Those damages are only due, however, if a plaintiff can show that his damages were "a result of the RESPA violation." Combs, 2017 U.S. Dist. LEXIS 100542, at *8-9 (emphasis in original).

---

[10] See 12 C.F.R. § 1024.41(b)(1) ("an application in connection with which a servicer has received all the information that the servicer requires from a borrower") (emphasis added).

Here, Plaintiffs submitted a loss mitigation application directly to Ditech on August 22, 2016. (Amend. Compl. ¶ 20). Sometime before August 30, 2017,[11] Ditech contacted Plaintiffs to inform them that a profit and loss statement was needed from Mr. Mastin. (Amend. Compl. ¶ 22). Plaintiffs submitted this document to Ditech on August 30, 2017. Id.

Taking the facts as Plaintiffs' allege them, it is clear that up to this point, Ditech considered Plaintiffs' loss mitigation application to be incomplete. Because Ditech is entitled to flexibility with regard to what it requires in evaluation of loss mitigation applications, Ditech's assessment of Plaintiffs' August 22, 2016, application should be considered proper under 12 C.F.R. § 1024.41, and Plaintiffs' application should be deemed not to have triggered any obligation on Ditech

_____

[11] Plaintiffs do not allege the exact date on which Ditech contacted them to request a profit and loss statement from Mr. Mastin; Plaintiffs do, however, state that they submitted the document to Ditech on August, 30, 2017. See (Amend. Compl. ¶ 22). 12 C.F.R. § 1024.41(b)(2)(i)(B) requires that, once a borrower submits to a servicer a complete loss mitigation application forty-five days before a scheduled foreclosure sale, the servicer is obligated to notify the buyer in writing, within five days of its receipt (excluding holidays and weekends), whether the application is either complete or incomplete. 12 C.F.R. § 1024.41(b)(2)(i)(B). In addition, the notice must state the documents and information the buyer must submit in order to make the application complete. Id. Here, Plaintiffs do not allege that Ditech is in violation of this provision, and, even if they had, the Amended Complaint does not plead "enough facts to state a claim to relief that is plausible on its face" because they have not alleged the date on which they received Ditech's request. Twombly, 550 U.S. at 570.

to postpone the foreclosure sale under 12 C.F.R. § 1024.41(g). CONSUMER FINANCIAL PROTECTION BUREAU, OFFICIAL INTERPRETATION TO 36(c)(1)(ii), https://www.consumerfinance.gov/eregulations/1024-41/2015-18239#1024-41-b-2. It follows that Plaintiffs' allegations as they relate to the August 22, 2016, loss mitigation application fail to state a claim upon which relief can be granted.

The Amended Complaint further alleges, however, that, "on the days leading up to the foreclosure sale," Ditech informed Plaintiffs that there had been a "math error" in the profit and loss statement Plaintiffs submitted on August 30, 2016. (Amend. Compl. ¶ 23). Plaintiffs were told that if they resubmitted a corrected version of the document the foreclosure sale would be postponed. Plaintiffs did so that same day. (Amend. Compl. ¶¶ 24-25). Nonetheless, says the Amended Complaint, Ditech did not postpone the foreclosure sale and the Property was sold on November 9, 2016. (Amend. Compl. ¶ 26-27). Although Plaintiffs do allege that Ditech contacted them regarding the error "in the days leading to the foreclosure sale," Plaintiffs do not allege any specific date on which they received such notice.

Unfortunately for Plaintiffs, time here is of the essence. In order for Plaintiffs to state a valid claim under 12 C.F.R. § 1024.41(g) and to support an obligation on Ditech to cease any foreclosure sale, Plaintiffs were required to submit the loss

mitigation application to Ditech "more than 37 days before [the] foreclosure sale." 12 C.F.R. § 1024.41(g). Without alleging a specific date on which Plaintiffs submitted the corrected information to Ditech, the Amended Complaint does not allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570. Absent a clear timeline defining when the application was submitted and when the foreclosure sale took place, the Amended Complaint does not plead facts which would allow a court to go beyond mere speculation or to draw a reasonable inference that Defendants are liable for the alleged misconduct. Iqbal, 556 U.S. 662, 678 (2009); see Twombly, 550 U.S. at 555.

Lastly, Plaintiffs allege that "under 12 C.F.R. 1241(c)(2)(ii) [sic], lenders may evaluate a loss mitigation package" even though it is incomplete and that, given Plaintiffs' circumstances, Ditech would "almost" be required to review their application, even if it were incomplete. (Amend. Compl. ¶ 46) (emphasis added). However, the plain language of the cited provision (and the plain language of the Amended Complaint) undermines this allegation. Lynch, 267 U.S. at 370. The regulation states more fully that "a servicer may, in its discretion, evaluate an incomplete loss mitigation application and offer a borrower a loss mitigation option." 12 C.F.R. § 1024.41(c)(2)(ii) (emphasis added). If that provision were not

25

plain enough, the regulation further states that nothing in its terms "imposes a duty on a servicer to provide any borrower with any specific loss mitigation option." 12 C.F.R. § 1024.41(a). In light of this language, any choice Ditech had under 12 C.F.R. § 1024.41 to evaluate Plaintiffs' loss mitigation application was merely discretionary, not compulsory. Because of this, Plaintiffs have failed to state a claim for violation of 12 C.F.R. § 1241 upon which relief can be granted.

For the foregoing reasons, the Amended Complaint fails to state a claim upon which relief can be granted to the extent it is based on Ditech's refusal to evaluate an incomplete loss mitigation and Ditech's failure to postpone the foreclosure sale. Furthermore, because the allegation rooted in 12 C.F.R. § 1024.41(c)(2)(ii) fails because of a misunderstanding of the law, and any attempt to remedy this inadequacy would be futile, the Amended Complaint based on 12 C.F.R. § 1024.4(c)(2)(ii) will be dismissed with prejudice.

Plaintiffs should, however, be given leave to amend their Amended Complaint as it relates to the claim based on 12 C.F.R. § 1024.41(g) (and only that claim). As to that claim, the Amended Complaint fails because it has not alleged enough facts for the Court draw a reasonable inference that Ditech could be liable for the alleged misconduct. It appears from briefing that, if given leave to amend the Amended Complaint, Plaintiffs

may be able to include the specific dates upon which they received Ditech's notice of the alleged "math error" contained in the profit and loss statement, and, more importantly, might be able to allege facts concerning the date on which that revised document was submitted to Ditech. (Amend. Compl. ¶ 23-25).

If the submission was made more than thirty-seven days before the foreclosure sale, Plaintiffs' allegations likely would survive a Rule 12(b)(6) motion to dismiss. See 12 C.F.R. § 1024.41(g).[12] Because "[t]he court should freely give leave when justice so requires," and allowing Plaintiffs to amend their amended complaint in this situation would not be futile or prejudice Defendants, this Court should grant Plaintiffs leave to do so. Fed. R. Civ. Pro. 15(a)(2); Labor, 438 F.3d at 426 (quoting Johnson, 785 F.2d at 509).

## III. Equitable Remedy of Rescission

Plaintiffs have requested a remedy which they cannot secure, but because they have failed to allege a right, this

---

[12] In addition, Plaintiffs might be able to allege that their loss mitigation application was "facially complete" as of their August 30, 2016, submission, and that, therefore, Ditech was required to treat it as complete for purposes of 12 C.F.R. § 1024.41(g). See under 12 C.F.R. § 1024.41(c)(2)(iv); supra note 8.

request can be dismissed in short order.[13] Plaintiffs allege that they are entitled to rescission of the foreclosure sale because it is "an appropriate claim for relief under Virginia law" and would "return the [sic] Plaintiffs to the position they were in before the improperly held foreclosure sale was conducted." (Amend. Compl. ¶¶ 47-48). Plaintiffs (and Defendants) mistakenly cite Virginia precedent that purports either to confer or deny a remedy of rescission of the foreclosure sale. (Amend. Compl. ¶¶ 47-52); (Def. Mem.). Both parties, however, miss the point.

The Amended Complaint does not assert a claim under Virginia law; instead, the Amended Complaint asserts claims only under federal regulations contained in 12 C.F.R. § 1026.36, 12 C.F.R. § 1024.38, and 12 C.F.R. § 1024.41. Therefore, whether the laws of Virginia would permit or deny the remedy of rescission has nothing to do with this matter. True, a federal court "sitting in diversity cases, when deciding questions of 'substantive' law, [is] bound by state court decisions as well as state statutes." 28 U.S.C. § 1652; <u>Hanna v. Plumer</u>, 380 U.S. 460, 465 (1965). But, in this case, the Court is not sitting in diversity. It is exercising its federal question jurisdiction

_____

[13] The remedy Plaintiffs request is addressed in this memorandum separately from the underlying merits of Plaintiffs' claims for two reasons: (1) Plaintiffs have organized their complaint in manner that appears to allege rescission of the foreclosure sale as a separate count, rather than a remedy tied to a right, (Amend. Compl. ¶¶ 47-52); and (2) it needs to be made clear to the Plaintiffs that injunctive relief is unavailable.

under 28 U.S.C. § 1331. (ECF No. 16). Accordingly, this matter is governed by federal law. <u>Erie Railroad Co. v. Tompkins</u>, 304 U.S. 64, 78 (1938).

First, Plaintiffs request that this Court order rescission of the foreclosure sale as a result of alleged violations of 12 C.F.R. 1026.36(c)(1)(ii). (Amend. Compl. ¶¶ 37, 47-52). Although it is true that, "[a]bsent the clearest command to the contrary from Congress, federal courts retain their equitable power to issue injunctions in suits over which they have jurisdiction," <u>Califano v. Yamasaki</u>, 442 U.S. 682, 704 (1979), Regulation Z provides for a remedy of rescission in consumer credit transactions in which a creditor acquires a security interest in the consumer's principal dwelling. 12. C.F.R. § 1026.23(a). However, this section provides that residential mortgages are specifically excluded from the regulation's coverage. 12 C.F.R. § 1026.23(f)(1). Because of this omission (and Plaintiffs' failure allege any violation under this regulation, as explained above) a request for this remedy as it relates to this regulation could not be granted.

Second, it appears from the Amended Complaint that the Plaintiffs pray for rescission of the foreclosure sale under 12 C.F.R. § 1024.38(a). (Amend. Compl. ¶ 47-52). As explained above, though, that regulation does not create a private right of action which Plaintiffs are entitled to enforce, much less a

private right of action. Thus, it does not allow the Court to grant them the equitable remedy of rescission. See Austerberry, 2015 U.S. Dist. LEXIS 163454, at *12-14; Smith v. Nationstar Mortg., 2015 U.S. Dist. LEXIS 154344, at *9-11; 78 Fed. Reg. at 10778. Any claim for such a remedy linked to this regulation must therefore fail.

Finally, Plaintiffs request this same remedy in connection with their alternative and inconsistent claims under 12 C.F.R. § 1024.41(g) and 12 C.F.R. § 1024.41(c)(2)(ii). (Amend. Compl. ¶¶ 38-40, 46-52). Under 12 C.F.R. § 1024.41, there is only a statutory remedy of damages. 12 U.S.C. § 2605(f); 12 C.F.R. § 1024.41(a). Courts have interpreted this enumeration of a damage remedy as evincing the intent of Congress to exclude all other remedies. Eslick, 2017 U.S. Dist. LEXIS 177957, at *4 (holding that 12 C.F.R. § 1024.41 "does not provide for injunctive relief in private actions for violations of loan modification procedures" and citing a string of cases from other jurisdictions that have held the same).

## CONCLUSION

For the foregoing reasons, DEFENDANT'S DITECH FINANCIAL LLC AND BANK OF NEW YORK MELLON CORPORATION'S MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT (ECF No. 21) will be granted as to all counts. The claim under 12 C.F.R. § 1026.36(c)(1)(ii) will be dismissed with prejudice; the claim under 12 C.F.R. §

1024.38(a) will be dismissed with prejudice; and, the claim under 12 C.F.R. § 1024.41(c)(2)(ii) will be dismissed with prejudice. To the extent the Amended Complaint claims that Ditech violated 12 C.F.R. § 1024.41(g), that claim will be dismissed without prejudice for leave to file another Amended Complaint. In that regard, any amendment must conform to standard pleading format and any amendment shall be filed by February 9, 2018. Ditech and BONY shall file Answers and any motions by March 9, 2018.

It is so ORDERED.

_____ /s/   *REP*

Robert E. Payne
Senior United States District Judge

Richmond, Virginia
Date: January *23*, 2018